Kennon, J.
The Cleveland, Columbus and Cincinnati Railroad Company, in 1849, sought to appropriate a part of the plaintiff’s land for the use of the road. The instrument of writing appropriating the land, was filed in the clerk’s office of the court of common pleas of Delaware county, a copy served on Gregory, and a petition filed asking M. L. Griffin, one of the associate judges of the court, to appoint three disinterested freeholders, resident of the county, appraisers, to ascertain the amount of damage which Gregory ought to receive according to the statute then in force.
The associate judge appointed the appraisers, who made the ap-* praisement, found the damages and benefits equal, and made their return accordingly. Application was afterward made to the court to set aside the appraisement and proceedings, for reasons assigned in the motion. The proceedings were set aside, and the court of common pleas appointed three other commissioners, and by warrant under the seal of the court, required them *to make the proper appraisement. In August, 1849, these commissioners made their return, assessing the defendant’s damage at $205, and tbe benefits conferred on the defendant by the road at the sum of $145, making the difference between the damages and benefits $60, to be paid by the company. A motion was made by Gregory to set aside this report for several reasons; one of which was, that two of the judges of the court of common pleaB, which appointed the appraisers or commissioners, were stockholders in the railroad corn *677 pany. The court refused to set aside the report, but made a journal entry that two of their members were, at the time of making the appointment of the appraisers, and still were, stockholders in the company, and interested in the matter in controversy, and, under the statute, certified the case to the court of common pleas of Union county. A motion was made in the court of common pleas of Union county to set aside the report, for the same and additional reasons; but the court overruled the motion, and confirmed the report of the commissioners. The case was then taken by Gregory, on certiorari, to the district court of Union county. The district court reversed the order of the court of common pleas of Union county, and remanded the case to the court of common pleas of Union county for further proceedings. The case is brought into this court on certiorari to the district court by the railroad company, for the purpose of reversing the order of the district court.
The error assigned by the company is, that the district court erred in reversing the order of the court of common pleas of Union county confirming the report of commissioners.
If the court of common pleas of Union county erred in confirming the report of the commissioners and the action of the court of common pleas of Delaware county, then there is no error in the order of the district court.
Is there any error in the ruling of the court of common pleas of Union county?
*lt is claimed that the court of common pleas of Union county ought to have set aside the report of the commissioners and the whole proceeedings, for various causes, which we do not consider it necessary to state, particularly as we find one cause for which, we think, the order of the common pleas should be set aside, and therefore the judgment of the district court affirmed.
It appears from the record, that two of the judges of the court of common pleas of Delaware county were stockholders in the railroad company, at the time of the commencement of the proceedings, and still were, at the time the case was transferred to Union county court. They were interested parties in the whole proceedings ; and the question presented is, whether they could make an order, touching the merits of the case, which could not be reversed, when no error appeared in the order itself? Is the mere fact that they were interested, a sufficient ground upon which to reverse the judgment ? The district court so held. Did that court err in so *678 holding? No man should be judge in his own cause, is a very common and true saying. If an interested court had nothing to decide but pure questions of law, and if those questions could all be clearly saved, so as to be' presented to a higher court, there might not be so much objection to such judges sitting in their own cases, because, if they erred, there might be a remedy to correct their errors. It sometimes, however, happens that there is great difficulty in getting correct bills of exceptions taken before disinterested judges, and there might be much greater before interested judges. In this proceeding, however, the court have the power, not only to decide the law questions arising in this case, but the statute confers on the court, and upon the court only, the power of selecting the men who shall decide the facts in the case, who determine how much benefit the road will be to the landholder, and how much damages he will sustain by the appropriation of the land — questions upon which men are likely to differ very much, some supposing that a railroad would be of great advantage to the person through whose Hand the road passes, and others that it would be an intolerable nuisance; the amount, if any, which the landholder receives depending entirely upon the preconceived opinions of men as to the utility of such road, and, consequently, the increased or diminished value of the land through which the road passes. There are few subjects upon which men are more likely to differ in opinion, -and few cases in which an interested judge, in the mere selection of the commissioners, could (if he chose to do só) more effectually injure the landholder, and that, too, without redress, if his judgment could not be reversed without showing actual error in the proceedings.
In the case of George A Pearson v. John Atwood, found in 13 Mass. 324, the interest of judges is discussed by Chief Justice Parker. The plaintiff brought an action of trespass against the defendant, for arresting the plaintiff, on a warrant held by the defendant as constable.
It appeared that a justice of the peace had issued a warrant to the defendant to arrest the plaintiff for a violation of the Sabbath day; that, by the laws of Massachusetts, a moiety of the fine went to the town in which the justice resided, and that, therefore, he was interested. And, although the court did not find it necessary, in the case, to hold the act of the justice wholly void, yet the chief justice, in commenting on the law, says: It is very certain that, by the *679 principles of natural justice and of the common law, no man can lawfully sit as judge in a case in which he may have a pecuniary interest. Nor does it make any difference how small the interest is. Any interest, however small, has been held sufficient to render a judge incompetent. The only exception known to this broad and general rule, exists where there may be a necessity that the judge should act in order to prevent a failure of justice.” After reciting the opinion of Lord Mansfield, in the case of Hestruph v. Braddock, upon the subject of the interest of witnesses and juries, Chief Justice Parsons says : “It is true he does not comprehend a judge within *his general exclusion on account of interest, but there can be no doubt that the principle applies, with equal strength, to them ; and we think, for this cause, any judgment rendered by a justice thus circumstanced, might be defeated; but as the interest of a justice who issues a warrant, may be latent and unknown to the officer who is called upon to servo it, we are not prepared to say he may not be protected from damages.”
No authority is cited by counsel bearing directly upon this point, and few can be found; and for the reason, that in but few cases do interested judges ever pretend to sit in such cases.
We think, for the administration of justice, the safe way is, in all cases, for interested judges to decline acting in such eases; and where it appears, on the record, that they were interested, and acted on questions of fact, and especially when they were to select the jury who try the facts, they should refuse to sit, and make known their interest at the earliest stage of the proceedings, that the case may, under our statute, be transferred to an adjoining county. In this case, the court appointed the appraisers and received their report, and did not, on motion, set the same aside; nor did the court of common pleas of Union county. We think the whole proceedings, after the issuing of the warrant, are erroneous, and ought to have been set aside; that the court of common pleas of Delaware county ought to have retraced its steps, and set aside the report of the commissioners, and that the court of common pleas of Union county erred in not doing so, and that, for this cause, the district court was right in reversing the order of that court.
The judgment of the district court is therefore affirmed, with costs.